UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES CROCKETT & TERESA CROCKETT,

                              *Plaintiffs,*

                    -against-

THE CITY OF NEW YORK, POLICE OFFICER
RAUL A. PEREZ (Shield No. 2957), in his
individual and official capacities; POLICE
OFFICER MATTHEW J. AMBROSINO (Shield
No. 1211), in his individual and official capacities;
POLICE OFFICER STEVEN BHAGAN (Shield
No. 13662), in his individual and official
capacities; LIEUTENANT GREACIA
HERDSMAN (ID No. 901687) in her official and
individual capacities; JOHN AND JANE DOES
POLICE OFFICERS & DETECTIVES 1-8, in their
individual and official capacities,

                              *Defendants.*
-------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D N Y

★   SEP 12 2011   ★

LONG ISLAND OFFICE

Docket No.:

**SUMMONS ISSUED**

**COMPLAINT**
*Jury Trial is Demanded*

CV - 11 4378

MAUSKOPF, J.

PLAINTIFFS, JAMES CROCKETT & TERESA CROCKETT, by and through their

attorneys, The Law Offices of Frederick K. Brewington, submit the following Complaint and state

and allege as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action seeking monetary relief, a declaratory judgment, compensatory

and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought

pursuant to *42 U.S.C.* § 1983, false arrest, malicious prosecution, abuse of process, loss of

consortium, and negligence/gross negligence. These actions include federal and state-law claims.

2.      Specifically, Plaintiffs allege that the Defendants (collectively and individually)

negligently, wantonly, recklessly, intentionally, unreasonably, and knowingly sought to and did

wrongfully deprive Plaintiffs of their Constitutional and common law rights, pursuant to the above

mentioned statutes and causes of action, by committing acts under color of law and depriving the

Plaintiffs of rights secured by the Constitution and laws of the State of New York.

3.      Plaintiffs allege that Defendants (collectively and individually), their agents, employees and servants unlawfully brutalized, **_shot_** and/or subject Plaintiff JAMES CROCKETT to gross excessive force, wrongfully detained, illegally and unconstitutionally seized, falsely arrested, intentionally and falsely imprisoned, falsely accused, harassed, defamed and maliciously charged Plaintiff JAMES CROCKETT with crimes, which Defendants knew were false at all times.

4.      Plaintiffs allege that the Defendants (collectively and individually) were negligent in their failure conduct a proper investigation, or intentionally refused to consider exculpatory evidence that was in Defendants' own possession(s), and was readily available and/or easily obtainable. Furthermore, the defendants knew or should have known about the existence of said exculpatory evidence, but failed to review the evidence in violation of the plaintiffs' constitutional and civil rights.

5.      Plaintiffs further allege that Defendants (collectively and individually) were grossly negligent in training, hiring and supervising its Defendant Police Officers.

6.      Additionally, Defendants are liable to the Plaintiffs for conspiring to condone and encourage such civil rights violations by failing to properly investigate and punish the actions of the Defendant police officers, and by maliciously failing to investigate, abusing process, wrongfully arresting and maliciously prosecuting Plaintiff JAMES CROCKETT.

7.      As a result of the defendants' actions (or lack thereof), Plaintiff JAMES CROCKETT was improperly subjected to excessive force, serious and permanent life-threatening injuries, and a period of wrongful imprisonment. The Plaintiff JAMES CROCKETT was also wrongfully forced into and subjected to criminal proceedings and prosecution.

8.      Furthermore, Plaintiffs incurred significant cost and expenses due to the Defendants' actions, including but not limited to: serious and life-threatening permanent physical injuries, substantial legal fees, medical bills, lost wages, loss of employment, loss of consortium, loss of employment, loss of prospective business and employment opportunities, prolonged incarceration and confinement to hospital and/or home, loss of reputation and standing in the

2

community and in his professional capacity, and other injuries/damages.

## JURISDICTION AND VENUE

9.     The jurisdiction of this Court is invoked under *28 U.S.C.* §§ 1331 and 1343. This Court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367.

10.     Venue in the Eastern District of New York is proper under *28 U.S.C.* § 1391, based on the fact that the place where the events and violations herein alleged occurred was Kings County.

11.     Prior to filing the instant Complaint, Plaintiffs timely filed and/or served a notice of Claim on Defendants via the Office of New York City Corporation Counsel, New York City Office of the Comptroller, New York City Police Departments, and New York City District Attorney's Office. Notices of Claims were mailed via certified mail, return receipt in May 3, 2010.

12.     Upon information and belief, Defendants provided Plaintiffs with notice that they wished to conduct a hearing pursuant to § 50-h of the General Municipal Law. Plaintiffs, through Counsel, adjourned said hearing pending the criminal matter. However, once the criminal matter ceased, Plaintiffs notified Defendants of their willingness to appear for a 50-h examination. However, Defendants failed to conduct a hearing/examination, pursuant to General Municipal Law § 50-h and failed to reject said notice of claim within the statutorily-prescribed time in the event that same did not comply with the General Municipal Law. Thus Defendants willingly waived their rights to any such examinations/hearings as a matter of fact and law.

## PARTIES

13.     Plaintiffs, JAMES CROCKETT & TERESA CROCKETT, are lawfully married and are residents of the State of New York, County of Kings.

14.     Dr. JAMES CROCKETT (hereinafter "MR. CROCKETT") is a sixty two (62) year old male, who resides in Brooklyn, New York. At all times relevant to the Complaint, MR. CROCKETT was gainfully and steadily employed with J.P. Morgan Chase Bank for thirty five (35) years before he was brutally shot by Defendant Police Officers herein. As a result of the

3

aforementioned shooting of MR. CROCKETT, MR. CROCKETT will be unable to resume employment, will lose substantial retirement benefits, and will be on disability for the remainder of his life.

15.     TERESA CROCKETT (hereinafter "MRS. CROCKETT") is the spouse of JAMES CROCKETT. MRS. CROCKETT currently resides with JAMES CROCKETT in their home in Brooklyn, New York. MR. and MRS. CROCETT have been legally married for twenty nine (29) years. At all times relevant to the Complaint, MRS. CROCKETT was partially disabled and was dependent and/or relied upon JAMES CROCKETT for emotional, financial, marital, physical and emotional support.

16.     Upon information and belief, Defendant CITY OF NEW YORK (hereinafter "Defendant CITY") is a duly constituted municipal corporation of the State of New York. Upon information and belief, the CITY formed and has direct authority over several different departments including the NEW YORK CITY POLICE DEPARTMENT and the Office of the New York County District Attorney. The aforementioned departments and/or the employees, agents or representatives of said departments are directly involved in violations that are the at issue in this Complaint.

17.     Upon information and belief, Defendants POLICE OFFICER RAUL A. PEREZ (Shield No. 2957); POLICE OFFICER MATTHEW J. AMBROSINO (Shield No. 1211); POLICE OFFICER STEVEN BHAGAN (Shield No. 13662); and LIEUTENANT GREACIA HERDSMAN (ID No. 901687) were and/or are agents, officers, representatives, and/or police officers of the New York City Police Department at all times relevant to the Complaint. Upon information and belief, each of the aforementioned were police officers assigned to the 83rd Precinct located in Brooklyn, New York. Said OFFICERS and DETECTIVES were acting in furtherance of the scope of their employments, acting under color of law - to wit under color of statutes, ordinances, regulations, policies, customs and usages of the Defendant City of New York. Said OFFICERS and DETECTIVES are being sued herein in their individual and official capacities.

4

18. Upon information and belief, JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, in their individual and official capacities, was and/or are agents, officers, representatives, and/or police officers and detectives of the New York City Police Department at all times relevant to the Complaint. Said OFFICERS and DETECTIVES were acting in furtherance of the scope of their employments, acting under color of law - to wit under color of statutes, ordinances, regulations, policies, customs and usages of the Defendant City of New York.

19. The Identities of said OFFICERS and DETECTIVES JOHN AND JANE DOES 1- are currently unknown to Plaintiffs and are know to Defendants. These Officers/Detectives are also being sued herein in their individual and official capacities. Plaintiffs reserve the right to amend the Complaint upon discovery of the names of the individual Officers/Detectives.

## FACTUAL ALLEGATIONS

20. On or about Saturday, February 6, 2010, Plaintiff JAMES CROCKETT was wrongfully shot and caused to be seriously and permanently injured by Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN.

21. On or about Saturday, February 6, 2010, prior to the shooting incident with Defendant Police, MR. CROCKETT visited a neighborhood bar/restaurant where he had consumed drinks and food in a peaceful and lawful manner.

22. Prior to visiting the neighborhood bar/restaurant, MR. CROCKETT went to work at his job at J.P. Morgan Chase.

23. At no time on the date and time of this incident was Mr. CROCKETT engaged in any unlawful, illegal or disruptive behavior.

24. At all times relevant to this Complaint, MR. CROCKETT did not own a gun (real, replica, toy, air-pistol, or otherwise). Further, MR. CROCKETT did not hold, or have possession of any such gun at anytime prior to the shooting incident.

25. At all times relevant to this Complaint, MR. CROCKETT did not carry or possess

5

any weapons and/or replica weapons. Most certainly, MR. CROCKETT never carried any weapons or replica weapons on his person as he walked the streets and/or in any areas outside of his residence.

26.    At all times relevant to this Complaint, MR. CROCKETT never acquired, or came into contact with, any weapons (real or replica) during the course of his entire day.

27.    At no time did MR. CROCKETT possess any weapons and/or objects that resembled a weapon at anytime as MR. CROCKETT proceeded through the course of his day.

28.    At all times relevant to this Complaint, MR. CROCKETT acted in a lawful, peaceable, and respectful manner while out in public. At no time did the Defendant Police have cause (reasonable or otherwise) to approach, stop, seize, arrest, and/or imprison MR. CROCKETT.

29.    At or about midnight - on the evening of Friday February 5, 2010 or the early morning of Saturday February 6, 2010, Mr. CROCKETT left the restaurant/bar that the was patronizing and proceeded to walk home.

30.    At the time that MR. CROCKETT left the bar/restaurant, MR. CROCKETT had consumed some alcohol drinks and may have been inebriated and/or slightly inebriated by alcohol.

31.    At sometime prior to Mr. CROCKETT'S walk home, MR. CROCKETT telephoned his wife THERESA CROCKETT, advised her of his whereabouts, and told her that he was about to start walking home.

32.    As MR. CROCKETT walked along Linden Street between Myrtle Ave and Wyckoff Ave in Brooklyn New York, MR. CROCKETT was approached by an unknown individual, who was also walking at the time.

33.    The unknown individual approached MR. CROCKETT in a violent, threatening, and/or unlawful manner.

34.    Upon information and belief, the unknown individual was carrying a weapon, weapons, and/or what appeared to be a weapon/gun.

35.    Upon information and belief, the unknown individual threatened and/or demanded

6

money and other personal items from MR. CROCKETT and made it clear that the unknown individual intend to forcefully take MR. CROCKETT's money and property by physical force. In no uncertain terms, the unknown individual made it known that he was attempting to rob MR. CROCKETT.

36.     At the time that the unknown individual attempted to rob MR. CROCKETT, the unknown individual showed, displayed, and/or brandished a weapon/gun at MR. CROCKETT.

37.     MR. CROCKETT then engaged in a physical struggle with the unknown assailant on the sidewalk in an effort to prevent to robbery from occurring. Upon information and belief, MR. CROCETT attempted to move the gun out of the unknown assailant's hands, and/or away from pointing in the direction of MR. CROCKETT, to prevent the assailant from causing physical harm to MR. CROCKETT.

38.     Upon information and belief, during the struggle, MR. CROCKETT was subdued, subjected to assault, battery, other physical violence at the hands of the unknown assailant. At all times relevant to the Complaint, Mr. CROCKETT was being victimized by the unknown assailant and/or was a victim or a robbery.

39.     During the struggle with the unknown assailant did, in fact, subject Mr. CROCKETT to a robbery and/or attempted to take MR. CROCKETT's personal property through the threat and use of force. .

40.     As a result of the struggle between the assailant and MR. CROCKETT, Mr. CROCKETT was left injured and unconscious and in physical and emotional distress.

41.     Upon information and belief, the assailant fled from the area wherein he robbed MR. CROCKETT before MR. CROCKETT could regain consciousness. MR. CROCKETT did not see the face of the assailant or the direction in which the assailant ran after robbing MR. CROCKETT.

42.     Upon information and belief, several eyewitnesses were in the immediate area and witnesses the event as MR. CROCKETT was being robbed by the unknown assailant.

7

43.  Upon information and belief, several people who were witnessing the robbery of MR. CROCKETT called the New York City Police Department via calls to the 911 emergency dispatch operator to report the incident.

44.  The 911 caller provided the police with a description of the assailant, who was dressed differently and looked different than MR. CROCKETT. MR. CROCKETT did not fit the description of the assailant.

45.  Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN were among the police officers that responded to the 911 emergency calls.

46.  Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN were the among first police officers that responded to the 911 emergency calls.

47.  Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN were the first officers to arrive on the scene where MR. CROCKETT was robbed and/or being robbed.

48.  Defendant Police Officer possessed a description of the assailant because the 911 caller described the assailant (and the assailant's clothing) to the 911 dispatch operator at the time that the 911 call was placed.

49.  Upon information and belief, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN were all together in a marked police van/vehicle that was being operated by Defendant AMBROSINO at the time.

50.  Upon information and belief, the Defendant officers approached the scene where MR. CROCKETT was robbed by traveling in the wrong direction up Linden Street which is designated as a one-way roadway.

51.  Upon information and belief, the unmarked vehicle being operated by Defendant Police Officers did not have its emergency lights turned on and/or did not have any of the vehicle's

8

emergency equipment activated at the time that they proceeded up Linden Street in the wrong direction.

52.     Defendant Officers came upon the area where MR. CROCKETT had just been robbed by the unknown assailant. Defendant Officers did not look for the witnesses who placed the 911 call(s), nor did the Defendant Officers attempt to speak with any witness upon arriving at the scene.

53.     Defendant Officers did not attempt to conduct a rudimentary investigation into the robbery, find out specifics related to the 911 report, or speak with the caller who placed said report, when they arrived on the scene.

54.     Upon information and belief, the unknown assailant, who had just robbed, beat, and caused MR. CROCKETT to lose consciousness fled at some time before, or at the time that, the Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN arrived at the area where MR. CROCKETT laid on the ground.

55.     The unknown assailant left MR. CROCKETT on the ground unconscious, dazed, confused and unaware.

56.     Upon information and belief, the unknown assailant, who had just robbed, and caused MR. CROCKETT to lose consciousness fled at some time before the Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN arrived at the area where MR. CROCKETT laid on the ground.

57.     The Defendant Officers saw MR. CROCKETT as he was on the ground and was slowly recovering or regaining consciousness from the attack/robbery.

58.     MR. CROCKETT had no guns, weapons, or other items on his person that could have been mistaken for a gun or dangerous weapon.

59.     MR.CROCKETT did not have any items in his hands when the Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER

STEVEN BHAGAN arrived at the scene.

60. MR. CROCKETT was not being violent, belligerent, disruptive, and/or was not acting in any way that would cause the Defendant Police Officers to believe that MR. CROCKETT was a danger to the Defendant Officers.

61. At no time did MR. CROCKETT waive or brandish any weapons toward Defendant Officers, nor did MR. CROCKETT threaten the Defendant Officers in any way.

62. Upon information and belief, MR. CROCKETT was either on the ground and/or attempting to help himself off of the ground when the Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN approached him.

63. At the time that the Defendant Officers approached MR. CROCKET, MR. CROCKETT appeared to be, and was actually in distress because he was the victim of a brutal assault and robbery that took place just moments before.

64. The fact that MR. CROCKETT was in great physical distress was, should have been, and/or would have been apparent to the Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN with reasonable observation and diligence.

65. The Defendant Police Officers were not exercising reasonable diligence at this time. Instead, the Defendant Police Officers arrived at the scene in an unreasonably hyper-vigilant state and arrived ready to use force - including but not limited lethal force.

66. The Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN approached Mr. CROCKETT in their police vehicle. The Defendant Officers hastily agreed to exit their vehicle, surround MR. CROCKETT, and assume different tactical positions around MR. CROCKETT.

67. Based upon information reasonably available to the Defendant Officers at the time, Defendant Officers had no reasonable cause or basis to surround MR. CROCKETT and/or take

tactical position around MR. CROCKETT and had no reason to consider that MR. CROCKETT was not a victim.

68.    At the time that Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN all agreed to hastily exit their police vehicle and surround MR. CROCKETT. Defendant Police Officers each had their guns drawn before they exited the vehicle.

69.    Based upon information reasonably available to the Defendant Officers at the time, Defendant Officers had no reasonable cause or basis to draw their weapons toward or at MR. CROCKETT.

70.    Though there was no visible threat to the Defendant Police Officers at that time, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN at the time, each Defendant Officer had their guns unholstered, drawn, and pointed toward MR. CROCKETT immediately upon exiting their vehicle.

71.    Based upon information reasonably available to the Defendant Officers at the time, Defendant Officers had no reasonable cause or basis to exit their vehicle with their guns drawn and trained on MR. CROCKETT.

72.    Without making a reasonable inquiry of MR. CROCKETT and/or without conducing a minimal investigation, Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN immediately approached and interacted with Mr. CROCKETT as though MR. CROCKETT was acting in criminal manner - as opposed to being the recent victim of a crime.

73.    Based upon information reasonably available to the Defendant Officers at the time, Defendant Officers had no reasonable cause or basis to supposed or assume that MR. CROCKETT should be approached as if he were acting in an unlawful manner.

74.    Upon information and belief, as MR. CROCKETT was regaining consciousness and was attempting to pick himself off of the floor, MR. CROCKETT was approached - by car and on

foot - by Defendant Police Officers RAUL A. PEREZ, MATTHEW J. AMBROSINO and STEVEN BHAGAN.

75. Without cause, provocation, or reason, Defendant Officer OFFICER RAUL A. PEREZ discharged his weapon directly at MR. CROCKETT - who was an unarmed civilian victim.

76. Based upon information reasonably available to the Defendant Officers at the time, Defendant Officers PEREZ had no reasonable cause or basis to discharge his weapon at or toward MR. CROCKETT.

77. Without cause, provocation, or reason, Defendant Officer OFFICER RAUL A. PEREZ discharged his weapon directly at MR. CROCKETT - who was not involved in any criminal activity at any time.

78. Without cause, provocation, or reason, Defendant Officer OFFICER RAUL A. PEREZ discharged his weapon directly at MR. CROCKETT. MR. CROCKETT gave the Defendant Police Officers no reason to discharge their weapons and/or no cause to believe that the use of physical force would be necessary.

79. Without cause, provocation, or reason, Defendant Officer OFFICER RAUL A. PEREZ shot MR. CROCKETT in his chest and also in his hip area.

80. Based upon information reasonably available to the Defendant Officers at the time, Defendant Officer PEREZ had no reasonable cause or basis to shoot and injure MR. CROCKETT.

81. Prior to shooting MR. CROCKETT, Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN did not speak with, or issue verbal commands to, MR. CROCKETT and/or provide MR. CROCKETT a reasonable opportunity to avoid being subjected to Defendants' unreasonable use of force.

82. Based upon information reasonably available to the Defendant Officers at the time, and based upon standard training issued to police officers throughout their careers, Defendant Officers should have, or would have with reasonable diligence, issued verbal commands to MR.

12

CROCKETT and/or conduced a reasonable investigation to determine if MR. CROCKETT was a danger to the Officers before subjecting him to immediate use of force.

83.     Defendant Officers did not make use of their training and/or reference the rules, regulations, and procedures of the New York City Police Department when approaching unarmed civilians and/or when responding to the scene of a 911 call.

84.     Defendant Police Officers, particularly Defendant Officer Perez, ignored his police training and experience and/or acted contrary thereto when he shot at and wounded MR. CROCKETT without cause, investigation, and or reasonable belief that said actions were necessary under the circumstances at the time. .

85.     When Plaintiff Mr. CROCKETT was shot and/or seriously injured by Defendant Police Officers, Mr. CROCKETT was unarmed.

86.     Based upon information reasonably available to the Defendant Officers at the time, Defendant Officer knew, should have known, or would have known with reasonable diligence that MR. CROCKETT was not armed.

87.     At the time that Plaintiff Mr. CROCKETT was shot and/or seriously injured by Defendant Police Officers, Mr. CROCKETT was not engaged in any criminal or unlawful activity.

88.     Based upon information reasonably available to the Defendant Officers at the time, Defendant Officer knew, should have known, or would have known with reasonable diligence that MR. CROCKETT was the victim of a robbery and was not engaged or involved in criminal activity.

89.     At the time that Plaintiff Mr. CROCKETT was shot and/or seriously injured by Defendant Police Officers, Mr. CROCKETT was on the ground and did pose any threat to the Defendant Police Officers.

90.     Based upon information reasonably available to the Defendant Officers at the time, Defendant Officer knew, should have known, or would have known with reasonable diligence that MR. CROCKETT was not a threat to the Defendant Officers.

91.     At the time that Plaintiff Mr. CROCKETT was shot and/or seriously injured by

13

Defendant Police Officers, Defendant Police Officer had no reason to shoot, fire at, and/or cause physical harm to MR. CROCKETT.

92.     Immediately upon shooting and seriously wounding MR. CROCKETT, Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN, began to concoct a story to explain why they shot and injured MR. CROCKETT - an unarmed, harmless civilian, who was the actual victim of a robbery.

93.     Immediately upon shooting and wounding MR. CROCKETT, Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN each agreed to fabricate a story that MR. CROCKETT was in possession of a weapon.

94.     Immediately upon shooting and seriously wounding MR. CROCKETT, Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN each agreed to falsify a story that MR. CROCKETT was posing a danger to the Defendant Officers and the public.

95.     Immediately upon shooting and seriously wounding MR. CROCKETT, Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN each agreed to misrepresent the facts and allege that MR. CROCKETT possessed and pointed a gun at the Defendant Police.

96.     At no time did MR. CROCKETT possess a weapon at any time relevant to the Complaint, nor did MR. CROCKETT ever point a gun at any persons or police officers.

97.     Upon information and belief, the Defendant Police Officers falsely stated that they saw the gun in MR. CROCKETT's possession at the time he was shot.

98.     Alternatively, Defendant Officers "threw down" a gun that Defendant Officers possessed prior to the shooting - which never belonged to MR. CROCKETT.

99.     In either case, Defendant Officers each wrongfully asserted that MR. CROCKETT possessed the gun and utilized it on the Defendant Officers, which necessitated their unreasonable

14

use of force upon MR. CROCKETT.

100.     In either case, Defendant Officers were all well-aware the MR. CROCKETT never possessed a gun and that their representations were false and/or calculated to defame, injure, falsely accuse, wrongfully arrest and maliciously prosecute MR. CROCKETT.

101.     In order to shield themselves from criminal and professional liability for wrongfully shooting MR. CROCKETT, Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN misrepresented that they had to shoot MR. CROCKETT because MR. CROCKETT allegedly placed the Defendant Officers in fear of their safety.

102.     Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN knew at all times that their allegations against MR. CROCKETT were false.

103.     Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN knew at all times that their false allegations against MR. CROCKETT were slanderous against MR. CROCKETT.

104.     Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN knew at all times that their false allegations against MR. CROCKETT would wrongful subject MR. CROCKETT to serious potential criminal and civil liability - including loss of liberty and negative stigmatization.

105.     Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN knew at all times that their allegations against MR. CROCKETT would cause irreparable damage to MR. CROCKETT's life, freedom, family, reputation and standing within the community at large.

106.     At the time that Defendant Officers cause injury to MR. CROCKETT and agreed to assert false allegations against MR. CROCKETT, Defendant Officers were well-aware that their actions would cause total and permanent physical injuries to MR. CROCKETT and his family.

107. Immediately after shooting MR. CROCKETT, while MR. CROCKETT laid helpless on the ground, Defendant Police Officers recovered MR. CROCKETT's state-issued identification and employment identification as well.

108. Immediately after shooting MR. CROCKETT, while MR. CROCKETT laid helpless on the ground, Defendant Police Officers learned that MR. CROCKETT was gainfully employed at J.P. Morgan Chase Bank when Defendant Officers examined MR. CROCKETT's identification.

109. Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN knew at all times that their allegations against MR. CROCKETT would cause irreparable damage to MR. CROCKETT's employment.

110. Nevertheless, Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN conspired openly and tacitly to provide a story to the public that would justify their wrongful actions against MR. CROCKETT - to the detriment of MR. CROCKETT - in order to prevent themselves (and the NYC Police Dept.) from public ridicule, liability and investigation.

111. Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN conspired openly and tacitly to provide a story to the public that would justify their wrongful actions against MR. CROCKETT - to the detriment of MR. CROCKETT - in order to prevent themselves from criminal, civil, administrative and/or professional reprimands and possible criminal investigation.

112. Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO and POLICE OFFICER STEVEN BHAGAN each conspired openly and tacitly to deprive MR. CROCKETT of his civil and constitutional rights - including his right to freedom, bodily integrity, property, life, personal security, and to remain free from unreasonable state infringement upon his rights.

113. Upon information and belief, moments after Defendant Police Officers shot and injured MR. CROCKETT - and while MR. CROCKETT laid helplessly on the ground suffering

from gunshot wounds - Defendant LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 arrived at the scene of the shooting.

114. When Defendant LIEUTENANT GREACIA HERDSMAN arrived at the scene, she exited her vehicle and witnessed MR. CROCKETT laying on the ground with one of the Defendant Officer's guns drawn on MR. CROCKETT.

115. None of Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN or JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 took no action to demonstrate that they cared about the well-being of MR. CROCKETT as he laid bleeding on the ground.

116. Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN or JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 failed to immediately summon emergency medical assistance for MR. CROCKETT as he laid wounded and bleeding on the ground.

117. Instead, upon information and belief, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 inquired only as to the well being of Defendant Officers, directed that a crime scene be established, and called for medical assistance for Defendant Officers.

118. Then, upon information and belief, Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 each continued in the conspiracy initiated by Defendant Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN to conjure a story to explain the shooting of MR. CROCKETT.

119. Each Defendant OFFICER RAUL A. PEREZ, OFFICER MATTHEW J.

17

AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 knew of and were aware of the plan against MR. CROCKETT. However, none of the aforementioned Defendants did anything to prevent said conspiracy to falsely accuse MR. CROCKETT of criminal wrongdoing.

120.     Upon information and belief, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 each took actions in furtherance of their conspiracy to falsely accuse MR. CROCKETT of criminal wrongdoing.

121.     Upon information and belief, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 confirmed the story that they would agree to provide to officials regarding the shooting of MR. CROCKETT.

122.     Upon information and belief, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 confirmed their false allegations of wrongdoing by MR. CROCKETT among each other and did, in fact, state and/or publish their false allegations to the police department, court, and community at large.

123.     At all times, Defendant Police Officers knew that MR. CROCKETT was, in fact, and innocent victim of a robbery.

124.     At all times, Defendant Police Officers knew that MR. CROCKETT thought that he was shot by the person who robbed him before Defendant Police arrived on the scene because MR. CROCKETT stated so to the police. Defendants took no action to correct his confusion.

125.     At all times, Defendant Police Officers knew that MR. CROCKETT was seriously

18

injured and unable to provide an accurate description of what actually happened to him that evening.

126.    Defendant Police Officers relied upon MR. CROCKETT's impaired mental and physical condition that they created at the time the he was shot by Defendant Officers to further their false allegations against MR. CROCKETT.

127.    Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 then caused MR. CROCKETT to be arrested and falsely charged with several crimes, which Defendants knew that MR. CROCKETT did not commit.

128.    Defendant Police Officers  OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 then caused MR. CROCKETT to be falsely arrested and imprisoned as he laid seriously injured in a hospital bed from which MR. CROCKETT was not free to leave due to his being falsely charged.

129.    Defendant Police Officers  OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 then caused MR. CROCKETT to lose his freedom of movement and caused MR. CROCKETT to be placed in the custody of the New York City Police Department and/or the City Of New York while he laid injured in a hospital bed.

130.    Defendant Police Officers  OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 then caused MR. CROCKETT to respond to false criminal charges as he laid incapacitated in a hospital bed.

19

131.     Defendant Police Officers  OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES  POLICE OFFICERS & DETECTIVES 1-8 then caused MR. CROCKETT to endure a stressful malicious criminal process as he was attempting to recover from the serious physical harm caused by Defendants.

132.     Defendant Police Officers  OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 prevented MR. CROCKETT from reasonable access to his attorney and his family - including his wife THERESA CROCKETT.

133.     While MR. CROCKETT laid in his hospital bed in extreme pain, Defendants JOHN AND JANE DOES  POLICE OFFICERS & DETECTIVES 1-8, actively prevented THERESA CROCKETT from visiting JAMES CROCKETT while intentionally subjecting THERESA CROCKETT to unreasonable callousness, verbal and emotional abuse.

134.     While MR. CROCKETT laid in his hospital bed in extreme pain, Defendants JOHN AND JANE DOES  POLICE OFFICERS & DETECTIVES 1-8, actively prevented THERESA CROCKETT from learning the medical status of JAMES CROCKETT and/or from speaking with the doctors that were treating JAMES CROCKETT.

135.     Defendants JOHN AND JANE DOES  POLICE OFFICERS & DETECTIVES 1-8 engaged in cruel, unusual, extreme, reckless, intentional, and callous conduct against THERESA CROCKETT, which Defendants knew or should have known would cause undue stress and/or exacerbate hardship upon THERESA CROCKETT.

136.     Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 prevented THERESA CROCKETT from rendering emotional, medical and martial support to JAMES CROCKETT - to the emotional and physical detriment of both MR. And MRS. CROCKETT.

137.     Upon information and belief, Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 were informed by medical staff that their actions against MR. and MRS. CROCKETT was causing them to become emotionally distraught. Yet, Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 intentionally ignored the issues raised by medical staff regarding the care of MR. CROCKETT.

138.     Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 had no regard for the bodily integrity, right to association, right to marital relationship, right to access to the courts, physical health/recovery, and/or emotional well-being of MR. CROCKETT, THERESA CROCKETT and their family.

139.     OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, collectively infringed upon the well-established rights of THERESA CROCKETT to consort, consult, and/or interact with her husband JAMES CROCKETT on the date of the incident *and at all times thereafter*.

140.     Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 then caused and supported the process leading MR. CROCKETT to be falsely charged and indicted with possession of a weapon, multiple counts of menacing a police officer, and other crimes.

141.     At all times, collective Defendants were aware that their allegations, statements, grand jury testimonies and arrest paperwork contained false allegations against JAMES CROCKETT.

142.     At all times, Collective Defendants were aware that their false allegations, false statements, perjured grand jury testimonies and false arrest paperwork would be utilized to subject JAMES CROCKETT to a malicious criminal prosecution.

143.     At all times, Collective Defendants were aware that their false allegations,

21

false statements, perjured grand jury testimonies and false arrest paperwork could cause JAMES CROCKETT to undergo further negative stigmatization, prolonged incarceration, loss of freedom, unnecessary seizure, loss of standing in his community and in his employment, damage to name and reputation of THERESA CROCKETT, and damage to the marital relationship of Plaintiffs.

144.    At all times, Collective Defendants were aware that their false allegations, false statements, perjured grand jury testimonies and false arrest paperwork could cause JAMES CROCKETT to suffer further loses, special damages (including attorney's fees and medical costs), emotional injuries, and a criminal record.

145.    Collective Defendant Police Officers disregarded the known and obvious adverse consequences that they each knew would be caused to MR. CROCKETT and MRS. CROCKETT and continued in their malicious efforts to ensure that MR. CROCKETT would be indicted and subjected to criminal penalties.

146.    Upon information and belief, collective Defendants willingly submitted their false allegations, false statements, perjured grand jury testimonies and false arrest paperwork to the Grand Jury for the purposes of securing a wrongful indictment against MR. CROCKETT.

147.    Upon information and belief, collective Defendants willingly withheld exculpatory evidence and other items tending to prove the innocence of MR. CROCKETT from the Grand Jury.

148.    Collective Defendants willingly and unreasonably supported and advanced the wrongful criminal prosecution against MR. CROCKETT.

149.    Collective Defendants were able to procure an indictment in the Kings County Criminal Court against MR. CROCKETT (in the matter of People v. James Crockett, indictment no.: 133/2010) through their use of false, malicious, and knowingly scurrilous allegations against JAMES CROCKETT. In addition, collective Defendants' withholding of critical evidence - including the identities and statements of eyewitnesses - to the Grand Jury attributed to the wrongful indictment of MR. CROCKETT.

150.    Plaintiff MR. CROCKETT maintained his innocense throughout the entire criminal

process - and at all times relevant to the Complaint. Indeed, MR. CROCKETT's criminal attorney continued to provide exculpatory information to the District Attorney as well as suggestions with respect to where the District Attorney's Office could obtain evidence tending to exculpate MR. CROCKETT throughout the process.

151.    Nevertheless, the malicious prosecution of MR. CROCKETT continued for fifteen (15) months do to the oppressive actions of collective Defendants who insisted that the false prosecution of JAMES CROCKETT continue.

152.    On or about May 9, 2011, at the eve of trial and after presenting bad-faith plea offers to MR. CROCKETT , the District Attorney's Office entered their own application to dimiss their criminal prosecution against MR. CROCKETT.

153.    As a result of the Distirict Attorney's application, the Kings County Criminal Court Judge (Hon. Judge Miriam Cyrulnik) voluntarily dismissed the criminal charges/indictment against MR. CROCKETT in total (in the matter of People v. James Crockett, indictment no.: 133/2010).

154.    At all times relevant to the Complaint, collective Individual Defendants, the Defendant CITY OF NEW YORK, as well as its departments and agents, such as the Kings County District Attorneys Office were aware that they lacked sufficient and/or credible evidence to maintain the criminal prosecution against JAMES CROCKETT.

155.    At all times relevant to the Complaint, Collective Individual Defendants, the Defendant CITY OF NEW YORK, as well as its departments and agents, such as the Kings County District Attorneys Office were aware that the evidence offered by Individual Defendants against MR. CROCKETT were false, suspect, and or required additional investigation.

156.    Nevertheless, At all times relevant to the Complaint the Defendant CITY OF NEW YORK, as well as its departments and agents, such as the Kings County District Attorneys Office intentionally maintained the criminal action against MR. CROCKETT for over a year in an effort to force MR. CROCKETT to plea to a criminal charge prior to trial.

157.    As a direct consequence of the actions of the Collective Defendants, MR.

23

CROCKETT suffered life-altering - permanent, serious, life-threatening, and debilitating physical injuries, including but not limited to, paralysis, paraplegia, gunshot wounds, damage to his bladder, damage to his diaphragm, damage to his lungs, damage to his spinal column, damage to his legs, feet, and lower extremities, injuries to his stomach, injuries to his hip, injuries to his kidneys, loss of blood, bruising, internal bleeding, permanent scarring, loss of ability to feed himself without assistance, loss of ability to perform minimal life function(s) (including feeding himself) without assistance, severe mental/emotional/psychological/stress-related injuries, loss of/to marital relationship and consortium, damage to bodily integrity, loss of mobility, and permanent confinement to a bed and/or wheelchair.

158.    As a direct consequence of the actions of the Collective Defendants, MR. CROCKETT suffered loss of employment, loss of employment opportunity, loss of freedom, loss of quality of life, loss of standing in the community, loss of time, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property as well as other financial impairments and damages.

159.    As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship.  In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks.

### AS AND FOR COUNT ONE
### 42 U.S.C. § 1983 EXCESSIVE FORCE

160.    Plaintiffs repeat, reiterate, and reallege each and every allegations contained in

24

paragraphs 1 through 159 of this Complaint with the same force and effect as though fully set forth herein.

161. OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 ("Collective Defendants") lacked reasonable cause to discharge their weapons, shoot, injure, assault, batter, seize, search, manhandle, menace and/or otherwise subject JAMES CROCKETT to violent physical contact.

162. OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 ("Collective Defendants") lacked reasonable cause to arrest Plaintiff JAMES CROCKETT or retain him in prolonged custody.

163. The wrongful detainment, wrongful arrest, excessive force, and other wrongful acts conducted against the Plaintiff by COLLECTIVE DEFENDANTS, their agent, employees and servants, were committed under the color of law, customs, and statutes of the State of New York to deprive Plaintiff JAMES CROCKETT of his various constitutional rights.

164. Plaintiff JAMES CROCKETT was placed in fear for his life, falsely seized, falsely detained and falsely arrested by the Defendants and unreasonably subject to excessive and unreasonable force and unlawful search and seizure.

165. Plaintiff JAMES CROCKETT was placed in fear for his life, falsely arrested, falsely seized, detained, and held for an unreasonable period of time against his will without justification, explanation or rationale for such detention.

166. Wile being detained, Plaintiff JAMES CROCKETT was subject to excessive and unreasonable force and to an unlawful search and unlawful imprisonment.

167. OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 were each aware of the unreasonable and

25

unlawful shooting, detention, stop, search, and seizure of Plaintiff JAMES CROCKETT.

168.    OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 , failed to take action to prevent this unlawful behavior by Defendant GULLO.

169.    Such search, seizure, arrest, detention and assault was ordered, condoned and authorized by CITY OF NEW YORK, its agents, employees, and servants including but not limited to OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 with unreasonable, callous, deliberate indifference to Plaintiff's innocence and physical welfare.

170.    As part of the false arrest, detention and accusations, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 caused Plaintiff JAMES CROCKETT to be shot, seriously and permanently injured, seized , arrested and held in a dangerous, compromising position for an unreasonable time without probable cause and caused him to be deprived of her liberty, without due process and was further exposed to disgrace, public humiliation and embarrassment.

171.    Defendants individually and collectively knew at the time of the Plaintiff's arrest and at all times since then that the Plaintiff was falsely accused of the criminal activity and the Plaintiff's arrest was based solely, or in part, on COLLECTIVE DEFENDANTS' motive or intent to cover-up their excessive force upon Plaintiff JAMES CROCKETT.

172.    Each of the Individual Defendants acting under color of law, acted unreasonably, and separately and/or in concert acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of his right to freedom from illegal seizure and freedom from illegal detention and imprisonment. All of these rights are secured to Plaintiff by the provisions of the due process

26

clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment and by 42 U.S.C. § 1983.

173. In falsely arresting, abusing, detaining, coercing, threatening, intimidating, and interrogating Plaintiff, the Defendants each knew or should have known they were violating laws of the State of New York and those statutory and Constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm Plaintiff.

174. As a direct consequence of the unreasonable excessive actions of the OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's - acting in furtherance of their duties as agents of the CITY OF NEW YORK, MR. CROCKETT suffered permanent, serious, life-threatening, and debilitating physical injuries, including but not limited to, paralysis, paraplegia, gunshot wounds, damage to his bladder, damage to his diaphragm, damage to his lungs, damage to his spinal column, damage to his legs, feet, and lower extremities, injuries to his stomach, injuries to his hip, injuries to his kidneys, loss of blood, bruising, internal bleeding, permanent scarring, loss of ability to feed himself without assistance, loss of ability to perform minimal life function(s) (including feeding himself) without assistance, severe mental/emotional/psychological/stress-related injuries, loss of/to marital relationship and consortium, damage to bodily integrity, loss of mobility, and permanent confinement to a bed and/or wheelchair.

175. As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of freedom, loss of quality of life, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical,

and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

176.    As a direct consequence of the actions of the Collective Defendants, MR. CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments and has been damaged in the sum of fifteen million ($15,000,000) dollars - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

**AS AND FOR COUNT TWO**
**42 U.S.C. § 1983 MUNICIPAL LIABILITY**

177.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 176 of this Complaint with the same force and effect as though fully set forth herein.

178.    In actively inflicting and failing to prevent the above stated abuses incurred by Plaintiff, the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, physical abuse, detained custody and other due process violations. Said rights guaranteed to the plaintiff by *42 U.S.C.* § 1983 and by the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

179.    The Municipal Defendant CITY OF NEW YORK, which governs, controls, operates, manages, supervises, and created the NEW YORK CITY POLICE DEPARTMENT has permitted, tolerated and encouraged a pattern and practice of unjustified, unreasonable and illegal abuses, use of excessive force, false arrest, false imprisonment, false prosecutions of persons by its police officers, detectives, and law enforcement agents.

180.    Although such police conduct are improper, said incidents are routinely covered up by the CITY OF NEW YORK, its agents, employees and servants by official claims that the

officers' use of excessive force, harassments, false arrests, malicious prosecutions, and false imprisonments were justified and proper, or by leveling false charges against the persons so falsely charged, so as to insulate the offending police officers and other officials.

181.    Said charges and official claims have been fully backed by the CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT, which has repeatedly and unreasonably sided with the abuse of persons so effected in nearly all cases, despite vast evidence of wrongdoing by its officers, including Plaintiffs herein.

182.    Defendant CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT has repeatedly and continuously engaged in and/or allowed is police officers such as Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 to knowingly and willingly subject civilians to excessive force (including but not limited to excessive use of firearms), file false reports, false criminal complaints, false criminal allegations, and false charges against innocent individuals such as Plaintiff JAMES CROCKETT - with immunity.

183.    As a direct result of the CITY OF NEW YORK's and the NEW YORK CITY POLICE DEPARTMENT's policy, practice of condoning the excessive use of force by its policre officers, and in allowing it Police officers, such as Defendant Officers herein to make false criminal complaints against innocent individuals, the CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT has been subjected to many federal and state Complaints and lawsuits alleging that Police officers subject civilians to unlawful excessive force and then routinely file false reports against innocent persons in violation of section 1983.

184.    For examples of similar lawsuits filed against the CITY OF NEW YORK alleging excessive force (involving police shooting incidents), false arrest and malicious prosecution, see, *inter alia*: *Nicole Paultre Bell, et al. v. The City of New York, et al.*, Case No. CV07 2994; *Dexter M. Brown v. City of NY*, Case No. 7003/99; *Jerell Chappell v. The City of New York*, Case No.

544/06; *Margarita Rosario v. City N.Y.*, Case No. 25092/95; *John Holloway v. City of NY*, Case No. 12525/03; *Malcolm Ferguson v. City N.Y.*, Case No. 18951/01; *Phyllis V. Clayburne v. City of New York*, Case No. 32987/04; *Salimata Sanfo v. New York City Police Department*, Case No. 1760cv04; *Michael Zito v. City of New York*, Case No. 14732/99; *Raymond B. Murray v. City of New York*, Case No. 13644/96; *Franklyn Waldron v. City of NY*, Case No. 25179/00; *Campos Vs. City of New York*, Index No. 108667-96; *Regina Garcia, v. Michael O'Keefe, et al.*, Case No. 116492/93; *Darryl Barnes v. City of New York*, Case No. 23752/91; *Thomas Cusanelli v. New York City Transit Authority*, Case No. 121242/95; *Christopher Nevin v. City of New York*, Case No. 17962/92; *Jason Rodriguez v. City of New York*, Case No. 17422/96; *Hector and Angelo Garcia v. City of New York*, Case No. 14647/92; *Alberto Castro v. City of New York*, Case No. 119140/93; *Darryl Barnes v. City of New York*, Case No. 23752/91; *Argenio vs. City of New York, et al.*, Index No. 117269/94; *Elsie Diaz v. City of New York*, Case No. 17731/85; *Regina Argenio v. City of New York*, Case No. 117269/94; *Bastion vs. City of New York*, Index No. 013735/90; *Beebe Vs. City of New York*, Index No. 3248/92; *Papa v. City of New York*, No. 15695/86, etc . . .

185.    Additionally, the CITY OF NEW YORK has systematically failed to identify the improper abuse, misuse, violative acts and brutality by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision or restraint. The CITY's continual refusal to train, supervise, instruct, discipline, and assure that the repeated abuses of it police officers (including writing true and accurate reports, perjury, falsely charging individuals, establishing probable cause, proper arrest procedures, and excessive force) was properly addressed constituted deliberate indifference to the rights, safety, and dignities secured by the public at large (including Plaintiffs herein). As a direct result its police officers continually write false reports, perjure themselves, falsely charge innocent persons and/or trump-up charges, arrest without probable cause, and subject individuals to excessive force.

186.    Upon information and belief, specific systemic flaws in the CITY OF NEW YORK'S supervision of its law enforcement agents and subsequent misconduct review process

include but are not limited to the following:

> a. Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers actions regardless of whether such actions are justified;
>
> b. Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;
>
> c. Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;
>
> d. Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed;
>
> e. Failing to reprimand, retrain, supervise, counsel, demote, suspend, terminate, and/or hold accountable it police officers accused of excessive force
>
> f. hastily accepting the polices' above- as provided information from police reports regarding abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.
>
> g. advising its law enforcement officers to level criminal charges against civilians involved in police shootings, no matter if said charges are justified, in order to force said civilian to engage in plea negotiations and/or plea offers which would effectively prevent false arrest and malicious prosecution charges from going forward against the City Of New York and allowing said false criminal charges to continue despite overwhelming evidence that the criminal charges lack basis;

187. Said cover-up by the defendant, CITY OF NEW YORK, was executed in this case, where the Defendant CITY, its agents, employees and servants failed to sufficiently investigate the truthfulness and accuracy of the Defendant Officer's, statements and instead acted under color of statute to knowingly, recklessly and/or negligently impose false criminal charges upon the Plaintiff JAMES CROCKETT.

188. By permitting and assisting such a pattern of police misconduct, the Defendant, CITY OF NEW YORK acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights; to wit the defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER

STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 were encouraged by the CITY OF NEW YORK, to believe that their actions against the Plaintiff JAMES CROCKETT would be accepted just as these actions have been so accepted to date.

189. As a consequence of the defendants' systemic practice, pattern, and custom of intentionally promoting and supporting officers' and official violations of 42 U.S.C. § 1983, Plaintiffs were deprived of their freedom(s) and physically and emotionally harmed, to the extent of which they suffered from permanent injuries, emotional anguish, special damages, legal fees/costs/expenses, medical costs, physical injuries, loss of employment, depression, sleeplessness, anxiety, and related emotional distress.

190. As a direct consequence of the actions of the CITY OF NEW YORK, MR. CROCKETT suffered permanent, serious, life-threatening, and debilitating physical injuries, including but not limited to, paralysis, paraplegia, gunshot wounds, damage to his bladder, damage to his diaphragm, damage to his lungs, damage to his spinal column, damage to his legs, feet, and lower extremities, injuries to his stomach, injuries to his hip, injuries to his kidneys, loss of blood, bruising, internal bleeding, permanent scarring, loss of ability to feed himself without assistance, loss of ability to perform minimal life function(s) (including feeding himself) without assistance, severe mental/emotional/psychological/stress-related injuries, loss of/to marital relationship and consortium, damage to bodily integrity, loss of mobility, and permanent confinement to a bed and/or wheelchair.

191. As a direct consequence of the actions of the Collective Defendants, MR. CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, loss of freedom, loss of quality of life, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments.

192. As a direct consequence of the actions of the Collective Defendants, MRS.

32

THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

193.    That by reason of the foregoing, Plaintiffs have been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

**AS AND FOR COUNT THREE**
**42 U.S.C. §1983 - ABUSE OF PROCESS**

194.    The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 193 of this Complaint with the same force and effect as though fully set forth herein.

195.    The Collective Defendants intentionally, recklessly and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading criminal complaint against Plaintiff JAMES CROCKETT. Said criminal complaint was made by the aforementioned Defendants without research and investigation (of any kind) into the veracity and/or truthfulness of said complaint.

196.    The false criminal complaint lodged by Defendants AGAINST JAMES CROCKETT was done with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

197.    Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN

AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 did not file said criminal complaint as a result of actual knowledge that a crime was committed, determined through investigation and/or a simple rudimentary search, which was available to Defendants.

198. Instead, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 filed said false criminal complaint against Plaintiff JAMES CROCKETT with an ulterior purpose/motive to subject Plaintiff as punishment without lawful court order and to collect payments and various forms of restitutions from Plaintiff to which Defendants were not entitled. Defendants subjected Plaintiff to the criminal justice system without just cause or reason.

199. CITY Defendants' motive for subjecting Plaintiff JAMES CROCKETT to false criminal process was to cover-up their wrongdoings, and to level charges against Plaintiff in an effort to ensure that Plaintiff would be convicted and would not be able to pursue her rights in court for her false arrest. Defendants also intended to cripple Plaintiff financially by forcing her into submitting to restitution payments, and courts fees/fines - not because they knew or believed that Plaintiff committed any criminal acts.

200. The Defendants' clear intentions was to use the criminal justice system to cause harm to Plaintiffs without proper motive, excuse or justification of any kind.

201. Defendants' use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiffs solely for a purpose that was/is outside the legitimate ends of the legal process.

202. Defendants CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, with knowledge of the inaccuracy and/or falsity of said criminal complaints made by Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE

34

OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN, and without any investigation and/or rudimentary query, intentionally, recklessly and maliciously caused to be filed, said false, inaccurate, and/or misleading criminal complaint against Plaintiff JAMES CROCKETT.

203.　The subsequent false arrest and malicious prosecution of Plaintiff JAMES CROCKETT was done by Defendants CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

204.　Defendant OFFICERS did not initiate the arrest and prosecution of Plaintiff as a result of actual knowledge that a crime was committed.

205.　Instead, Defendant OFFICERS searched, seized, harassed, annoyed, falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff with an ulterior purpose/motive to collect payments, and fees. Defendants were motivated by the intent to subject Plaintiff to the criminal system in order to force, coerce and justify restitutions, payments, and fees from Plaintiff and to shield themselves from liability from the wrongful actions committed against Plaintiff.

206.　Defendants' CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's, clear intention was to use falsely arrest, and falsely prosecute Plaintiff JAMES CROCKETT and to cause harm to Plaintiffs without proper motive, excuse, or justification of any kind.

207.　Defendants' CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's, use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the criminal process (i.e. to prevent criminal and professional

35

liability to Defendants and to obtain personal monetary returns).

208. As a direct consequence of the Collective Defendants' wrongful actions, grossly negligent behavior, and violation of state/federal laws, Plaintiff JAMES CROCKETT was: deprived of his freedom, subjected to false criminal arrest, subjected to malicious criminal prosecution, made to suffer great personal physical injuries, made to suffer financial/monetary injuries, subjected to great fear, terror, personal humiliation and degradation , and continues to suffer pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

209. As a direct consequence of the actions of the OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's - acting in furtherance of their duties as agents of the CITY OF NEW YORK,, MR. CROCKETT suffered permanent, serious, life-threatening, and debilitating physical injuries, including but not limited to, paralysis, paraplegia, gunshot wounds, damage to his bladder, damage to his diaphragm, damage to his lungs, damage to his spinal column, damage to his legs, feet, and lower extremities, injuries to his stomach, injuries to his hip, injuries to his kidneys, loss of blood, bruising, internal bleeding, permanent scarring, loss of ability to feed himself without assistance, loss of ability to perform minimal life function(s) (including feeding himself) without assistance, severe mental/emotional/psychological/stress-related injuries, loss of/to marital relationship and consortium, damage to bodily integrity, loss of mobility, and permanent confinement to a bed and/or wheelchair.

210. As a direct consequence of the actions of the Collective Defendants, MR. CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, loss of freedom, loss of quality of life, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments.

211. As a direct consequence of the actions of the Collective Defendants, MRS.

THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

212.    That by reason of the foregoing, Plaintiffs have been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

## AS AND FOR COUNT FOUR
## 42 U.S.C. §1983 FALSE ARREST AND MALICIOUS PROSECUTION

213.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 212 of this Complaint with the same force and effect as though fully set forth herein.

214.    The Collective Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's lacked reasonable suspicion to stop and detain the Plaintiff JAMES CROCKETT and further lacked any probable cause to arrest him, cause him to be arrested, and/or to retain him in custody.

215.    Without such probable cause, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's wrongfully used physical force to arrest and detain the Plaintiff JAMES CROCKETT. During said time, Plaintiff was physically prevented from leaving the custody and kept there under the

37

supervision and knowledge of the Defendants without access to his freedom, family and home. Defendants then fabricated false statements, falsified records, mis characterized facts, and engaged in perjury in Court in an attempt to justify their excessive force upon, and false arrest of Plaintiff JAMES CROCKETT.

216. The subsequent malicious prosecution of Plaintiff JAMES CROCKETT, which was conducted by Collective Defendants with knowledge that Plaintiff was wrongfully stopped, falsely detained, shot, assaulted/battered, AND wrongfully arrested, without any cause, was committed by Defendants under color of law, customs, and statutes of the State of New York. Defendants then fabricated false statements, falsified records, mis characterized facts, and engaged in perjury in an attempt to justify and further their malicious prosecution of Plaintiff JAMES CROCKETT.

217. Under color of law, the Defendants deprived Plaintiff JAMES CROCKETT of his rights to protection from unlawful search and seizure by falsely charging Plaintiff criminally and prosecuting the Plaintiff pursuant to said criminal statutes, for which there was no evidence or substantiation of any kind to support the allegations.

218. The accusations of wrongful actions leveled against Plaintiff JAMES CROCKETT were false and were an attempt to cover up the false arrest and abuse of process which has been inflicted by Defendants on Plaintiff JAMES CROCKETT.

219. The malicious prosecution of Plaintiff JAMES CROCKETT without probable cause, and other wrongful acts conducted against the Plaintiff by Defendants constitutes a violation of Plaintiff's rights, secured by the New York State Constitution, to be free from unreasonable searches and seizures. Such actions were grossly negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject JAMES CROCKETT to summary punishment, but failed to prevent same and breached their duty.

220. The Defendants acted under color of law to deny the Plaintiff JAMES CROCKETT his constitutional rights to due process and freedom from seizure, by wrongfully detaining them under the threat of imprisonment, without providing any reasonable basis and/or investigation

38

warranting prosecution, or other due process guarantees secured to the Plaintiff.

221.    As a direct consequence of the actions of the OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's - acting in furtherance of their duties as agents of the CITY OF NEW YORK,, MR.CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, loss of freedom, loss of quality of life, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments.

222.    As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

223.    That by reason of the foregoing, Plaintiff has been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

### AS AND FOR COUNT FIVE
### *42 U.S.C.* §1983 -FOURTH, FIFTH, FOURTEENTH AMENDMENT
### and violation(s) of Plaintiff JAMES CROCKETT'S Substantive Due Process Rights

224.    The Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 223 of this Complaint with the same force and effect as though fully set forth herein.

225. The Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's knew or should have known that the shooting, assault, battery, detainment, assault, false arrest, and wrongful imprisonment of Plaintiff violated JAMES CROCKETT'S various rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments.

226. Each of the said Defendants had the authority, ability and concurrent duty under the Fourth, Fifth and Fourteenth Amendments to prevent the shooting, assault, false arrest, wrongful detainment and false charging of the Plaintiff JAMES CROCKETT, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur.

227. The DEFENDANTS' OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's failure to stop these wrongful actions constitutes a breach of their duty, as public servants acting under the color of law, to do so under the Fourth, Fifth and Fourteenth Amendments.

228. Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's knew or should have known that the intentional and/or grossly negligent shooting, fabricated criminal charges, hospital prison-like confinement and other abusive actions against Plaintiff JAMES CROCKETT were violative of his Fourth, Fifth and Fourteenth Amendment rights to due process, and substantive due process rights under the Constitution.

229. Defendants' shooting, false imprisonment, false accusations against, assault, battery, prolonged confinement, removal of Plaintiff JAMES CROCKETT from his family and friends while in the hospital, and acts of mental verbal abuse against JAMES and THERESA CROCKETT

during the hospitalization of JAMES CROCKETT, violated Plaintiff's substantive due process rights to bodily integrity, familial association, access to the courts, access to his Counsel, life, liberty, property as well as Plaintiffs' rights to be free from cruel and unusual punishment.

230.    Defendant CITY OF NEW YORK'S position of taking no action and refusal to discipline the DEFENDANT OFFICERS for their misconduct against Plaintiffs is neglectful of their duty to prevent the further violation of Plaintiff's right to compensation under *42 U.S.C.* §1983, with such violation occurring as a result of said officers being improperly cleared of any wrongdoing, despite substantial eye-witness and physical evidence to the contrary.

231.    As a direct consequence of the actions of OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's - acting in furtherance of their duties as agents of the CITY OF NEW YORK, MR. CROCKETT suffered permanent, serious, life-threatening, and debilitating physical injuries, including but not limited to, paralysis, paraplegia, gunshot wounds, damage to his bladder, damage to his diaphragm, damage to his lungs, damage to his spinal column, damage to his legs, feet, and lower extremities, injuries to his stomach, injuries to his hip, injuries to his kidneys, loss of blood, bruising, internal bleeding, permanent scarring, loss of ability to feed himself without assistance, loss of ability to perform minimal life function(s) (including feeding himself) without assistance, severe mental/emotional/psychological/stress-related injuries, loss of/to marital relationship and consortium, damage to bodily integrity, loss of mobility, and permanent confinement to a bed and/or wheelchair.

232.    As a direct consequence of the actions of the Collective Defendants, MR. CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments.

233. As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks.

234. That by reason of the foregoing, Plaintiffs have been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* § 1988, and punitive damages.

### AS AND FOR COUNT SIX
### 42 U.S.C. § 1983 - LOSS OF CONSORTIUM (Plaintiff Theresa Crockett)

235. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 234 of this Complaint with the same force and effect as though fully set forth herein.

236. Plaintiff THERESA CROCKETT is the wife/spouse of Plaintiff JAMES CROCKETT and has been the legal spouse of JAME CROCKETT for over twenty two 22 years.

237. Plaintiff THERESA CROCKETT relied upon JAMES CROCKETT for spousal support, familial support, love, companionship, affection, society, sexual relations, solace, financial support, and emotional support.

238. All of the aforementioned areas of support provided to Plaintiff THERESA CROCKETT by her husband JAMES CROCKETT were hindered, prevented, infringed-upon, taken-away, and/or otherwise destroyed by the actions of Collective Defendants.

239. As a direct consequence of the actions of the Collective Defendants, MRS.

THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

240. By reason of the foregoing, Plaintiff THERESA CROCKETT has been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

## AS AND FOR COUNT SEVEN
## 42 U.S.C. § 1983 - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff Theresa Crockett)

241. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 240 of this Complaint with the same force and effect as though fully set forth herein.

242. Defendant Police Officers OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 prevented MR. CROCKETT from reasonable access to his family - including his wife THERESA CROCKETT.

243. While MR. CROCKETT laid in his hospital bed in extreme pain, Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, actively prevented THERESA CROCKETT from visiting JAMES CROCKETT while intentionally subjecting THERESA CROCKETT to unreasonable callousness, verbal and emotional abuse.

244. While MR. CROCKETT laid in his hospital bed in extreme pain, Defendants JOHN

43

AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, actively prevented THERESA CROCKETT from learning the medical status of JAMES CROCKETT and/or from speaking with the doctors that were treating JAMES CROCKETT and/or having reasonable access to MR. CROCKETT medical information.

245. Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 engaged in cruel, unusual, extreme, reckless, intentional, and callous conduct against THERESA CROCKETT, which Defendants knew or should have known would cause undue stress and/or exacerbate hardship upon THERESA CROCKETT.

246. Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 prevented THERESA CROCKETT from rendering emotional, medical and martial support to JAMES CROCKETT - to the emotional and physical detriment of both MR. And MRS. CROCKETT.

247. Upon information and belief, Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 were informed by medical staff that their actions against MR. And MRS. CROCKETT was causing them to become emotionally distraught. Yet, Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 intentionally ignored the issues raised by medical staff regarding the care of MR. CROCKETT.

248. Defendants JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 had not regard for the bodily integrity, right to association, right to marital relationship, physical health/recovery, and/or emotional well-being of MR. CROCKETT, THERESA CROCKETT and their family.

249. OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, and POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, collectively infringed upon the well-established rights of THERESA CROCKETT to consort, consult, and/or interact with her husband JAMES CROCKETT on the date of the incident *and at all times thereafter*.

44

250. Collective Defendants knew or should have known that their intentional, reckless, callous and deliberately indifferent attitude and actions toward THERESA CROCKETT, knowing that her husband JAMES CROCKETT was just brutally shot and in a serious medical condition, was extreme, detrimental to MRS. CROCKETT, and shocked the conscious.

251. As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

252. By reason of the foregoing, Plaintiff THERESA CROCKETT has been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

### AS AND FOR COUNT EIGHT
### ABUSE OF PROCESS *(Under State Law)*

253. The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 252 of this Complaint with the same force and effect as though fully set forth herein.

254. The Collective Defendants intentionally, recklessly and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading criminal complaint against Plaintiff JAMES CROCKETT. Said criminal complaint was made by the aforementioned Defendants without research and investigation (of any kind) into the veracity and/or truthfulness of said complaint.

45

255. The false criminal complaint lodged by Defendants AGAINST JAMES CROCKETT was done with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

256. Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 did not file said criminal complaint as a result of actual knowledge that a crime was committed, determined through investigation and/or a simple rudimentary search, which was available to Defendants.

257. Instead, Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8 filed said false criminal complaint against Plaintiff JAMES CROCKETT with an ulterior purpose/motive to subject Plaintiff as punishment without lawful court order and to collect payments and various forms of restitutions from Plaintiff to which Defendants were not entitled. Defendants subjected Plaintiff to the criminal justice system without just cause or reason.

258. CITY Defendants' motive for subjecting Plaintiff JAMES CROCKETT to false criminal process was to cover-up their wrongdoings, and to level charges against Plaintiff in an effort to ensure that Plaintiff would be convicted and would not be able to pursue her rights in court for her false arrest. Defendants also intended to cripple Plaintiff financially by forcing her into submitting to restitution payments, and courts fees/fines - not because they knew or believed that Plaintiff committed any criminal acts.

259. The Defendants' clear intentions was to use the criminal justice system to cause harm to Plaintiffs without proper motive, excuse or justification of any kind.

260. Defendants' use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiffs solely for a purpose that was/is outside the legitimate ends of the legal process.

261. Defendants CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8, with knowledge of the inaccuracy and/or falsity of said criminal complaints made by Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN, and without any investigation and/or rudimentary query, intentionally, recklessly and maliciously caused to be filed, said false, inaccurate, and/or misleading criminal complaint against Plaintiff JAMES CROCKETT.

262. The subsequent false arrest and malicious prosecution of Plaintiff JAMES CROCKETT was done by Defendants CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

263. Defendant OFFICERS did not initiate the arrest and prosecution of Plaintiff as a result of actual knowledge that a crime was committed.

264. Instead, Defendant OFFICERS searched, seized, harassed, annoyed, falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff with an ulterior purpose/motive to collect payments, and fees. Defendants were motivated by the intent to subject Plaintiff to the criminal system in order to force, coerce and justify restitutions, payments, and fees from Plaintiff and to shield themselves from liability from the wrongful actions committed against Plaintiff.

265. Defendants' CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's, clear intention was to use falsely arrest, and falsely prosecute Plaintiff JAMES CROCKETT and to cause harm to Plaintiffs without proper motive, excuse, or justification of any kind.

266. Defendants' CITY OF NEW YORK, OFFICER RAUL A. PEREZ, OFFICER

MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's, use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the criminal process (i.e. to prevent criminal and professional liability to Defendants and to obtain personal monetary returns).

267. As a direct consequence of the Collective Defendants' wrongful actions, grossly negligent behavior, and violation of state/federal laws, Plaintiff JAMES CROCKETT was: deprived of his freedom, subjected to false criminal arrest, subjected to malicious criminal prosecution, made to suffer great personal physical injuries, made to suffer financial/monetary injuries, subjected to great fear, terror, personal humiliation and degradation , and continues to suffer pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

268. As a direct consequence of the actions of the OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's - acting in furtherance of their duties as agents of the CITY OF NEW YORK,, MR. CROCKETT suffered permanent, serious, life-threatening, and debilitating physical injuries, including but not limited to, paralysis, paraplegia, gunshot wounds, damage to his bladder, damage to his diaphragm, damage to his lungs, damage to his spinal column, damage to his legs, feet, and lower extremities, injuries to his stomach, injuries to his hip, injuries to his kidneys, loss of blood, bruising, internal bleeding, permanent scarring, loss of ability to feed himself without assistance, loss of ability to perform minimal life function(s) (including feeding himself) without assistance, severe mental/emotional/psychological/stress-related injuries, loss of/to marital relationship and consortium, damage to bodily integrity, loss of mobility, and permanent confinement to a bed and/or wheelchair.

269. As a direct consequence of the actions of the Collective Defendants, MR.

CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, loss of freedom, loss of quality of life, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments.

270.    As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship.  In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

271.    That by reason of the foregoing, Plaintiffs have been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action and attorneys fees.

### AS AND FOR COUNT NINE
### MALICIOUS PROSECUTION *(Under State Law)*

272.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 271 of this Complaint with the same force and effect as though fully set forth herein.

273.    The Collective Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's lacked reasonable suspicion to stop and detain the Plaintiff JAMES CROCKETT and further lacked any probable cause to arrest him, cause him to be arrested, and/or to retain him in custody.

274.    Without such probable cause, Defendants OFFICER RAUL A. PEREZ, OFFICER

49

MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's wrongfully used physical force to arrest and detain the Plaintiff JAMES CROCKETT. During said time, Plaintiff was physically prevented from leaving the custody and kept there under the supervision and knowledge of the Defendants without access to his freedom, family and home. Defendants then fabricated false statements, falsified records, mis characterized facts, and engaged in perjury in Court in an attempt to justify their excessive force upon, and false arrest of Plaintiff JAMES CROCKETT.

275.    The subsequent malicious prosecution of Plaintiff JAMES CROCKETT, which was conducted by Collective Defendants with knowledge that Plaintiff was wrongfully stopped, falsely detained, shot, assaulted/battered, AND wrongfully arrested, without any cause, was committed by Defendants under color of law, customs, and statutes of the State of New York. Defendants then fabricated false statements, falsified records, mis characterized facts, and engaged in perjury in an attempt to justify and further their malicious prosecution of Plaintiff JAMES CROCKETT.

276.    Under color of law, the Defendants deprived Plaintiff JAMES CROCKETT of his rights to protection from unlawful search and seizure by falsely charging Plaintiff criminally and prosecuting the Plaintiff pursuant to said criminal statutes, for which there was no evidence or substantiation of any kind to support the allegations.

277.    The accusations of wrongful actions leveled against Plaintiff JAMES CROCKETT were false and were an attempt to cover up the false arrest and abuse of process which has been inflicted by Defendants on Plaintiff JAMES CROCKETT.

278.    The malicious prosecution of Plaintiff JAMES CROCKETT without probable cause, and other wrongful acts conducted against the Plaintiff by Defendants constitutes a violation of Plaintiff's rights, secured by the New York State Constitution, to be free from unreasonable searches and seizures. Such actions were grossly negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject JAMES CROCKETT to summary

50

punishment, but failed to prevent same and breached their duty.

279. The Defendants acted under color of law to deny the Plaintiff JAMES CROCKETT his constitutional rights to due process and freedom from seizure, by wrongfully detaining them under the threat of imprisonment, without providing any reasonable basis and/or investigation warranting prosecution, or other due process guarantees secured to the Plaintiff.

280. As a direct consequence of the actions of the OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's - acting in furtherance of their duties as agents of the CITY OF NEW YORK,, MR.CROCKETT suffered loss of employment, loss of employment opportunity, loss of standing in the community, loss of time, loss of freedom, loss of quality of life, criminal record, arrest record, damage to name and reputation, special damages, attorney's fees, medical fees/costs, incidental fees/costs, loss of property and other financial impairments.

281. As a direct consequence of the actions of the Collective Defendants, MRS. THERESA CROCKETT suffered severe emotional/mental/psychological/stress-related injuries, loss of/to marital relationship, loss of consortium, loss of employment and/or employment opportunities, loss of emotional and mental support, medical fees/bills/costs, legal fees/bills/costs, incidental fees and costs, loss of love, loss of companionship, loss of affection, loss of society, loss of sexual relations, loss of solace, and loss of familial relationship. In addition, THERESA CROCKETT must now tend to most of the physical, medical, and emotional needs of JAMES CROCKETT, who now depends on THERESA CROCKETT to perform even the most minimal daily tasks

282. That by reason of the foregoing, Plaintiff has been damaged in the sum of fifteen million dollars ($15,000,000.00) - not including the cost of this action and attorneys fees.

## PUNITIVE DAMAGES ARE APPROPRIATE
*(As To The Individual Defendants Only, Not Municipal Defendant City Of New York)*

283.    The acts of the individual Defendants OFFICER RAUL A. PEREZ, OFFICER MATTHEW J. AMBROSINO, POLICE OFFICER STEVEN BHAGAN, LIEUTENANT GREACIA HERDSMAN and JOHN AND JANE DOES POLICE OFFICERS & DETECTIVES 1-8's were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiffs, without regard for Plaintiffs' well beings, and were based on a lack of concern and ill-will towards Plaintiffs.    Such acts therefore deserve an award of Twenty Million Dollars ($20,000,000.00) as punitive damages.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants:

a)     As for Count One in the sum of fifteen  million ($15,000,000.00) dollars;

b)     As for Count Two in the sum of fifteen  million ($15,000,000.00) dollars;

c)     As for Count Three in the sum of fifteen  million ($15,000,000.00) dollars;

d)     As for Count Four in the sum of fifteen  million ($15,000,000.00) dollars;

e)     As for Count Five in the sum of fifteen  million ($15,000,000.00) dollars;

f)     As for Count Six in the sum of fifteen  million ($15,000,000.00) dollars;

g)     As for Count Seven in the sum of fifteen  million ($15,000,000.00) dollars;

h)     As for Count Eight in the sum of fifteen  million ($15,000,000.00) dollars;

i)     As for Count Nine in the sum of fifteen  million ($15,000,000.00) dollars;

j)     Punitive damages in the amount of twenty million dollars ($20,000,000.00);

k)     costs and attorneys fees pursuant to *42 U.S.C.* §1988 and as otherwise allowed by law; and,

l)     Any and all other relief this Court deems appropriate and just.

Dated: Hempstead, New York
      September 9, 2011

Respectfully submitted,

LAW OFFICES OF
FREDERICK K. BREWINGTON

By:      _____

FREDERICK K. BREWINGTON (FB5295)
GREGORY CALLISTE, JR.(GC8140)
*Attorneys for Plaintiffs*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959 (p)
(516)489-6958 (f)